**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____ :
                                             :
TEVA PHARMACEUTICALS USA, INC.,              :
TEVA PHARMACEUTICALS INDUSTRIES              :
LTD., AND TEVA NEUROSCIENCE, INC.,           :
                                             :
        Plaintiffs,                 :
                                             :     Civil Action No. 17-275(FLW)
        v.                          :
                                             :        **OPINION**
SANDOZ INC. AND MOMENTA                      :
PHARMACEUTICALS, INC.,                       :
                                             :
        Defendants.                 :
_____ :

**WOLFSON**, **United States District Judge:**

      Plaintiffs Teva Pharmaceuticals USA, Inc. ("Teva USA"), Teva Pharmaceuticals Industries

Ltd. ("Teva Ltd."), and Teva Neuroscience, Inc. ("Teva Neuroscience") (collectively, "Teva" or

"Plaintiffs") filed this action for patent infringement and declaratory judgment against defendants

Sandoz Inc. ("Sandoz" or "Defendant") and Momenta Pharmaceuticals, Inc. ("Momenta").[1]

Presently before the Court is Sandoz's Motion to Transfer Venue, brought pursuant to to 28 U.S.C.

§ 1404(a).  For the reasons that follow, Sandoz's Motion is GRANTED, and the Court transfers

this case to the United States District Court for the District of Delaware.

---

[1] On January 31, 2017, Teva voluntarily dismissed Momenta without prejudice from this lawsuit.
Pls.' Notice of Voluntary Dismissal, ECF No. 19.  Nonetheless, because the presence of
Momenta impacts the transfer analysis, the Court will discuss Momenta's role in this case in
deciding the present Motion to Transfer.

# I. STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]

## A. The Parties

Teva USA is a Delaware corporation with its principal place of business in Pennsylvania. Pls.' Compl. ¶ 2. Teva Ltd., the parent corporation of Teva USA, is an Israeli company with its principal place of business in Israel. *Id.* at ¶ 3. Teva Neuroscience is a Delaware corporation with its principal place of business in Kansas. *Id.* at ¶ 4. These Teva entities are multinational pharmaceutical companies that specialize primarily in manufacturing generic drugs, but also develop proprietary pharmaceuticals.

Sandoz is a Colorado corporation with its principal place of business in New Jersey. *Id.* at ¶ 5. Sandoz is a pharmaceutical company that, among other business interests, markets, distributes, and sells generic drugs. *Id.* at ¶ 3. Momenta is a Delaware corporation with its principal place of business in Massachusetts. Storer Decl. ¶¶ 8-9. Momenta is a pharmaceutical company that develops, markets, distributes, and sells generic drugs. Pls.' Compl. ¶ 25.

## B. The Complaint

On January 13, 2017, Teva filed a Complaint against Sandoz and Momenta, alleging that Sandoz has attempted to market, manufacture, and sell a generic version of Teva's COPAXONE® 40 mg/mL product (the "Product") prior to the expiration of U.S. Patent No. 9,155,775 (the "'775 patent"). Pls.' Compl. ¶ 1. The Product, which is marketed as COPAXONE® 40 mg/mL, contains

---

[2] On a motion to transfer, in addition to the Complaint, the Court may consider "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

40 mg/mL glatiramer acetate,[3] and is used to treat patients with relapsing-remitting forms of multiple sclerosis. *Id*. at ¶¶ 1, 42-43.

By way of background, on October 13, 2016, the United States Patent and Trademark Office issued the '775 patent, entitled "Process for Manufacturing Glatiramer Acetate Product," to Teva Ltd. *Id.* at ¶ 36. The '775 patent has an expiration date of January 28, 2035, and covers twenty-seven claims. *Id.* Teva Ltd. is the sole owner of the patent, and has granted Teva USA an exclusive license under the '775 patent to use, offer to sell, sell, and import the Product in the United States. *Id*. at ¶ 39. Teva USA holds the New Drug Application ("NDA") for the Product. According to Teva, the invention claimed in the '775 patent reflects its "discovery that filtering pharmaceutical preparations of glatiramer acetate at temperatures of above 0° C to 17.5° C" improves filtration and facilitates the commercial production of the Product. *Id.* at ¶ 45.

Subsequently, Sandoz filed an Abbreviated New Drug Application ("ANDA"), pursuant to 21 U.S.C. § 335(j), seeking United States Food and Drug Administration ("FDA") approval to manufacture and market into the United States a generic version of the Product. *Id.* at ¶ 47. In order to be approved by the FDA, the generic version of the Product must have the same active ingredient as the innovator drug, and must be "equivalent to the innovator drug product in dosage form, strength, route of administration, quality, performance characteristics, and intended use." *Id.* at ¶¶ 50-51.

In the Complaint, Teva alleges that Sandoz's actions, in attempting to manufacture, market, sell, offer to sell, and/or import a generic version of the Product, constitute or will constitute: direct infringement of the '775 patent under 35 U.S.C. § 271(a); inducement of infringement of the '775

---

[3] Glatiramer acetate is "a complex mixture of polypeptide chains made from four amino acid building blocks." Pls.' Compl. ¶ 44.

patent under 35 U.S.C. § 271(b); contributory infringement of the '775 patent under 35 U.S.C. § 271(c); and infringement of the '775 patent under 35 U.S.C. § 271(g). *Id.* at ¶ 59-60. Teva maintains that, due to its complexity, the Product cannot be fully characterized, and that its method of action has not been "fully elucidated." *Id.* at ¶ 52. However, although it is unclear what specific attributes of the Product are responsible for its safe and effective use, Teva submits that "the method of manufacturing" the Product contributes to its composition and effectiveness. *Id.* at ¶¶ 52-53. Teva alleges that because the manufacturing processes claimed in the '775 patent are the only "commercially feasible means of producing commercial scale quantities" of the Product, in order for Sandoz to produce a generic product that would gain FDA approval, Sandoz must be using a process that infringes at least one of the claims of the '775 patent. *Id.* at ¶¶ 54-56.

### C.    Related Actions

This action is one of several cases, filed in various districts, involving the alleged infringement or noninfringement of patents covering COPAXONE®. On September 10, 2014, Teva filed the first such case before the Honorable Gregory M. Sleet, U.S.D.J., in the District of Delaware, naming Sandoz and Momenta as defendants. Judge Sleet later consolidated that case with similar suits that were subsequently filed by Teva against eight other entities (the "Consolidated Action").[4] *See In re Copaxone Consol. Cases*, No. 14-1171, 2017 WL 401943 (D. Del. Jan. 30, 2017). In its second amended complaint in the Consolidated Action, Teva alleged that the defendants infringed four method-of-treatment patents covering the Product. *See id.* at *1. On January 30, 2017, following a seven-day bench trial in that case, Judge Sleet found that "all asserted claims of the patents-in-suit are invalid as obvious." *Id.*

---

[4] Those eight defendants are as follows:  Sandoz, Inc.; Momenta Pharmaceuticals, Inc.; Dr. Reddy's Laboratories, Inc.; Synthon Pharmaceuticals Inc.; Synthon B.V.; Synthon s.r.o. Blankso; Amneal Pharmaceuticals LLC; and Amneal Pharmaceuticals Co. GmbH.

On December 19, 2016, while the Consolidated Action was pending, Teva filed another action in the District of Delaware, naming as defendants Sandoz, Momenta, and several other ANDA filers. *See Teva Pharmaceuticals USA, Inc. et al. v. Doctor Reddy's Laboratories, Ltd. et al.*, No. 16-1267 (D. Del. Dec. 19, 2017). That action, which was also assigned to Judge Sleet, concerned a glatiramer acetate-related patent (United States Patent No. 9,402,874). Mylan and Sandoz filed counterclaims in that case, on February 8, 2017 and February 10, 2017, respectively, adding allegations regarding the '775 patent. *Id.* Additionally, on January 25, 2017, Amneal[5] filed an action in the District of Delaware, seeking a declaratory judgment that the '775 patent is invalid. *See Amneal Pharmaceuticals LLC et al. v. Teva Pharmaceuticals USA, Inc. et al.*, No. 17-00074 (D. Del. Jan. 25, 2017). That case was also assigned to Judge Sleet. Finally, on February 2, 2017, after being voluntarily dismissed from the present action, Momenta brought a declaratory judgment action concerning the '775 patent against Teva in the District of Delaware, which action was ultimately assigned to Judge Sleet. *See Momenta Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, No. 17-109 (D. Del. Feb 2, 2017).

Moreover, in addition to the present action and the aforementioned proceedings in Delaware, Teva has filed method-of-manufacturing cases involving the alleged infringement of the '775 patent in the Northern District of West Virginia,[6] the Southern District of New York,[7] and the Eastern District of New York.[8] Teva's allegations in each of those cases mirror those

---

[5] Amneal is a pharmaceutical company that specializes in researching, manufacturing, and distributing generic pharmaceuticals.

[6] *See Teva Pharmaceuticals USA, Inc. et al. v. Mylan Pharmaceuticals Inc. et al.*, No. 17-00007, 2017 WL 958324 (N.D.W. Va. Mar. 10, 2017).

[7] *See Teva Pharmaceuticals USA, Inc. et al. v. Synthon Pharmaceuticals Inc. et al.*, No. 17-00345 (S.D.N.Y.).

[8] *See Teva Pharmaceuticals USA, Inc. et al. v. Amneal Pharmaceuticals LLC et al.*, No. 17-00416 (E.D.N.Y.).

asserted in the present Complaint; *i.e.*, Teva alleges that the respective defendants have committed patent infringement by attempting to market, manufacture, and sell a generic version of the Product.  As explained in section I(D) below, the cases before the Northern District of West Virginia and the Southern District of New York have already been transferred to the District of Delaware, and the defendants in the action before the Eastern District of New York have sought to transfer that case to the District of Delaware, as well.

### D.      Momenta as a Necessary and Indispensable Party

On January 26, 2017, Sandoz filed the instant Motion, requesting that this action be transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Delaware.  In addition to the present Motion, Momenta, prior to its voluntary dismissal by Teva, filed a Motion to Dismiss for Lack of Personal Jurisdiction on January 26, 2017.  Def.'s Mot. to Dismiss, ECF No. 9.  On January 31, 2017, Teva voluntarily dismissed Momenta without prejudice from this lawsuit.  Pls.' Notice of Voluntary Dismissal, ECF No. 19.  Subsequently, Sandoz argued to the Court, in various correspondence, without formal briefing, that Momenta is a necessary and indispensable party to this action, and therefore, that it must be joined.  Sandoz further argues that since this Court lacks personal jurisdiction over Momenta, the case must be dismissed or transferred to the District of Delaware, which has jurisdiction over all parties.  Sandoz reasons that Momenta is necessary and indispensable because it has substantial interests in the litigation, which will not be adequately protected if Momenta is absent.  Conversely, Teva maintains that Momenta need not be a part of this litigation, because the effect of the ultimate decision on Momenta is immaterial, and Teva can obtain complete relief from Sandoz without Momenta's participation. The Court directed the parties to brief the joinder issue, because, at the time the parties made such arguments, neither party had alerted this Court of the pendency of any other litigation regarding

the '775 patent, and the issue of whether Momenta was an indispensable party was crucial to the Court's transfer analysis. Sandoz formally filed its Motion to Dismiss for Failure to Join an Indispensable Party on February 24, 2017. Defs.' Mot. to Dismiss or Transfer, ECF No. 58.

Since the filing of Sandoz's Motion, two similar method-of-manufacturing cases concerning the '775 patent have been transferred to the District of Delaware. *See Teva Pharmaceuticals USA, Inc. et al. v. Mylan Pharmaceuticals Inc. et al*., No. 17-00007, 2017 WL 958324, at *7 (N.D.W. Va. Mar. 10, 2017); *Teva Pharmaceuticals v. Synthon Pharmaceuticals, Inc., et al.*, No. 17-345 (S.D.N.Y. Mar. 31, 2017). First, in *Mylan Pharmaceuticals*, the Honorable Irene M. Keeley, U.S.D.J., found that transfer of that case to the District of Delaware was warranted, because related proceedings concerning the '775 patent were already before the District of Delaware, and thus, transfer would facilitate efficient pretrial proceedings and discovery, and avoid inconsistent results. *Mylan Pharmaceuticals*, 2017 WL 958324, at *7. Likewise, in *Synthon Pharmaceuticals*, the Honorable Lorna G. Schofield, U.S.D.J., transferred to the District of Delaware Teva's patent infringement case, concerning the same product at issue here, finding that transfer would conserve judicial resources and minimize the possibility for inconsistent results. *Synthon Pharmaceuticals*, No. 17-345, at *4.

As a result of those two transfers, as well as the December 19, 2016 case filed by Teva and Momenta and Amneal's declaratory actions, several actions concerning the '775 patent that involve the same parties are currently pending before Judge Sleet in the District of Delaware. Accordingly, whether or not Momenta is a necessary and indispensable party is no longer the dispositive question in the transfer analysis. Rather, as discussed below, a weighing of the pertinent *Jumara* private and public interest factors favors transferring this case to the District of Delaware. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

## II.    **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of section 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 525–26 (D.N.J. 2000).  The burden of establishing the need for transfer rests on the moving party, *Jumara.*, 55 F.3d at 879, and the ultimate decision of whether to transfer a case lies within the "sound discretion of the trial court." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).

This Court's inquiry in determining whether to transfer venue pursuant to section 1404(a) is twofold.  *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) ("Section 1404 requires a two-pronged analysis.").  First, the Court must determine whether jurisdiction and venue would be proper in the proposed transferee district. *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 337 (D.N.J. 2003).  Second, if the Court is satisfied that jurisdiction in the transferee district is proper, it must determine whether transfer is in the interests of justice and convenience.  *Id.*  That inquiry "is flexible and must be made on the unique facts of each case." *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000).  "While there is no definitive formula or list of the factors to consider," the Third Circuit has set out various private and public interest factors that guide the transfer analysis.  *See Jumara*, 55 F.3d at 879.

The private interests include: the plaintiff's forum preference; the defendant's forum preference; "whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location

of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (internal citations omitted).

Public factors to be considered include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80 (internal citations omitted).

## III.   DISCUSSION

Defendant Sandoz argues that this action should be transferred to the District of Delaware, because that District is an appropriate forum in which Plaintiffs' action could have been brought, and transfer would serve the interests of justice and convenience. Specifically, Defendant maintains that transfer is warranted because several related actions involving the '775 patent are already pending in the District of Delaware, and that forum has already familiarized itself with the complexities involved in the related actions. In response, Plaintiffs argue that there is no judicial economy to be gained by transfer, because the issues that will be raised in this method-of-manufacturing patent dispute differ from those raised in the method-of-treatment case that was previously tried in the District of Delaware. Additionally, Plaintiffs argue that this action should remain in the District of New Jersey, because there are strong ties between the parties and New Jersey, and the operative facts giving rise to this claim occurred in New Jersey.

### A.   The District of Delaware is a District in Which This Action Could Have Been Brought

The threshold question on a motion to transfer venue is whether the transferee district is a "district in which this action might have been brought." 28 U.S.C. § 1404(a); *see also Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). An action "might have been brought" in a

transferee district if that district has: "(1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Yang*, 409 F. Supp. 2d at 604 (citing *Shutte v. Armco Steep Corp.*, 431 F.2d 22, 24 (3d Cir.1970)). The Court finds that those requirements are satisfied in this case.

First, the District of Delaware has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Second, there is no dispute that the District of Delaware has personal jurisdiction over the parties to this case; indeed, the parties to this action are already litigating several related actions in the District of Delaware involving infringement of the Product at issue here. *See Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 n.5 (D.N.J. 1996) (finding jurisdiction in the transferee district was proper, where the transferee district "already exercised jurisdiction over these same defendants with respect to these same allegations."). Moreover, while Momenta has been voluntarily dismissed from this action, the Court notes that there was personal jurisdiction over Momenta in the District of Delaware at the time the present Complaint was filed, because Momenta is incorporated in Delaware, and has filed a declaratory action in that forum. Finally, Teva does not contest that venue in the District of Delaware would have been proper under 28 U.S.C. § 1400(b). Accordingly, because the District of Delaware could have exercised subject matter and personal jurisdiction over the parties, and is a proper venue for this dispute, the Court finds that this action "might have been brought" in the District of Delaware. *See* 28 U.S.C. § 1404(a).

### B. Transfer to the District of Delaware is in the Interests of Justice and Convenience

Having found that this action could have been brought in the District of Delaware, the Court must next address whether, on balance of the pertinent *Jumara* factors, transfer is in the

interests of justice and convenience.  *See* 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879.  For the reasons that follow, the Court concludes that transfer to the District of Delaware is appropriate.

### 1.    *Private Interest Factors*

Under Section 1404(a), the private interests a court should consider include:

(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (quoting *Jumara*, 55 F.3d at 879) (internal citations and quotations omitted).  The Court finds that all of those factors are either neutral or favor transfer.

First, while courts generally give deference to a plaintiff's choice of forum, the plaintiff's forum preference is given less deference where, as in this case, the plaintiff has chosen a foreign forum and the operative facts giving rise to the claim occurred outside of the forum chosen by the plaintiff.  *Liggett Grp*, 102 F. Supp. 2d at 530 ("One situation where deference to the choice of forum is curbed is where the plaintiff has not chosen a home forum. . . .  Another situation is where the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit."); *Danka Funding*, 21 F. Supp. 2d at 475 ("The plaintiff's choice, however, is entitled to less deference where the operative facts of a lawsuit occurred outside the forum selected by plaintiff.").  Here, it is undisputed that New Jersey is not Teva's home forum; Teva Ltd. is an Israeli company with its principal place of business in Israel, and Teva USA and Teva Neuroscience are Delaware corporations with principal places of business in Pennsylvania and Kansas, respectively.  Additionally, as discussed in factor three below, the Court finds that the

operative facts of this case occurred outside of New Jersey. Therefore, Plaintiff's choice of forum is accorded less weight.

Second, as demonstrated by its Motion, Sandoz prefers the District of Delaware as the proper forum. Sandoz's forum preference is bolstered by the fact that Momenta is a Delaware corporation and several related method-of-manufacturing cases are currently pending before the District of Delaware, involving the same parties and claims as the present case, including actions filed by Plaintiffs and Momenta. *See Intendis, Inc. v. River's Edge Pharm., LLC*, No. 11-2838, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011) (finding factor two weighed in favor of transfer, where the plaintiff had filed a related action in that forum). Thus, this factor weighs in favor of transfer.

Third, the operative facts giving rise to this claim did not occur within New Jersey. Sandoz argues that the central facts of this lawsuit occurred outside of New Jersey, on the grounds that none of the research, development, and testing performed by Momenta relating to the generic version of the Product was performed in New Jersey, and the generic product will not be manufactured in New Jersey. Sandoz also contends that although it maintains a New Jersey facility, the Sandoz personnel responsible for filing the ANDA at issue in this case reside in Sandoz's Colorado facility. Conversely, Teva maintains that Sandoz conducted activities related to the infringing manufacturing process at its New Jersey headquarters, and that Sandoz's infringing product will be sold and shipped to customers in New Jersey.

Courts in this district have adopted two different approaches to evaluating where operative facts arise in patent infringement cases. On one hand, the majority of courts employ the "center of gravity" approach, which looks "to the location of the product's development, testing, research and production, as well as where marketing decisions are made, 'rather than

where limited sales activity has occurred.'" *Refined Recommendation Corp. v. Netflix, Inc.,* No. 07-04981, 2008 WL 474106, at *4 (D.N.J. Feb. 15, 2008) (citation omitted); *see Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993) ("In patent infringement actions, 'as a general rule, the preferred forum is that which is the center of gravity of the accused activity.'") (citation omitted); *Intendis*, 2011 WL 5513195, at *4 (applying the "center of gravity" approach); *see also Synchronoss Technologies, Inc. v. Dropbox, Inc.*, No. 15-2192, 2015 WL 13064914, at *1 (D.N.J. Dec. 30, 2015) (employing center of gravity approach to find that claim arose where "engineering, development, product design, marketing, and sales activities" took place); *Lanard Toys Ltd. v. Toys R US-Delaware, Inc.*, No. 14-1939, 2015 WL 3794595, at *4 (D.N.J. June 16, 2015) ("The center of gravity of this dispute is in the Middle District of Florida where the accused product was designed and developed."). For example, in *Refined Recommendation Corp.*, the court employed the "center of gravity" approach and found that the plaintiff's claim arose in California, where "[a]ll of Defendant's servers, processors, databases and employees with responsibility for sales and marketing decisions [were] located in Los Gatos, California." 2008 WL 474106, at *1, 4.

On the other hand, Teva cites to recent unreported decisions that have employed a "sales approach," finding patent claims arise where the allegedly infringing products are sold. *See Master Cutlery, Inc. v. Panther Trading Co.*, No. 12-4493, 2012 WL 6597056, at *3 (D.N.J. Dec. 17, 2012) ("Intellectual property infringement occurs, among other places, where any allegedly infringing articles are sold."); *see also Telebrands Corp. v. Mopnado*, No. 14-07969, 2016 WL 368166, at *11 (D.N.J. Jan. 12, 2016), *report and recommendation adopted*, No. 14-7969, 2016 WL 355072 (D.N.J. Jan. 28, 2016) (finding that patent infringement claim arose where the allegedly infringing product was sold). For example, in *Master Cutlery*, the court

found that the plaintiff's infringement claims arose in New Jersey, where the defendant sold the allegedly infringing product in New Jersey.  *See* 2012 WL 6597056, at *3.

Having surveyed these cases, the Court finds that the "center of gravity" approach is both more commonly used and appropriate in this case, because the alleged infringement concerns a generic product that has not yet been sold, and thus, the focus on where the claim arose should necessarily be the location where Sandoz's allegedly infringing product was designed, developed, and tested.  *See Internal Combustion Sols., LLC v. Yoshimura Research & Dev. of Am., Inc.*, No. 13-02793, 2014 WL 1391178, at *3 (D.N.J. Apr. 9, 2014) (finding that the operative facts in a patent infringement case occurred where the "allegedly infringing products were designed, developed, and tested . . . ."); *Refined Recommendation Corp.*, 2008 WL 474106, at *4; *Bristol–Meyers Squibb Co. v. Andrx Pharmas., LLC,* No. 03-2503, 2003 WL 22888804, at *3 (S.D.N.Y. Dec. 5, 2003) (holding that in a patent infringement action based on an ANDA filing, the operative facts occurred where the design and development of the infringing patent occurred).  Indeed, it would be unhelpful at this time, prior to the sale of the generic product, to adopt the sales approach.  Here, Sandoz personnel located in Colorado electronically filed the ANDA at issue from Sandoz's Colorado facility.  Moreover, none of the research, development, and testing performed by Momenta regarding the generic product was performed in New Jersey, and the product will not be manufactured in New Jersey.  *See* Defs.' Mot. to Transfer 22, ECF No. 8; Storer Decl. ¶¶ 15, 32.  Accordingly, the Court finds that Plaintiffs' infringement claims did not arise in New Jersey.  Nonetheless, because operative facts giving rise to the claims also did not occur in Delaware, the Court finds that this factor is neutral.

Finally, the Court finds that the fourth, fifth, and sixth factors do not weigh in favor of, or against, transfer.  With regard to the fourth factor, "the convenience of the parties as indicated by

their relative physical and financial condition," *Jumara*, 55 F.3d at 879, neither party has provided evidence that litigation in this District or the District of Delaware would be particularly inconvenient due to physical or financial circumstances.[9]  Additionally, the Third Circuit in *Jumara* advised that courts should only consider the fifth factor, the convenience of the witnesses, "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  As with the fourth factor, neither party has proffered evidence that its witnesses will be unavailable in either this District or the District of Delaware.  Similarly, the Court cannot find, based on the record, that books and records in this case could not be produced in the District of Delaware.  Accordingly, this Court finds that factors four, five, and six are neutral, and, on balance, the private interest factors weigh only slightly in favor of transfer to the District of Delaware.

### 2. Public Interest Factors

Under Section 1404, the public interests a court should consider include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

---

[9] The Court's holding regarding the fourth factor is limited to convenience as it relates to physical or financial means.  To that end, neither party has proffered evidence as to their relative size, financial situations, or physical burdens in litigating in either district.  However, as explained in the Court's discussion of the public interest factors below, that finding does not preclude this Court from concluding that transfer to the District of Delaware is convenient in terms of fostering judicial efficiency under the public interests prong of the *Jumara* test.  *See Bayer Pharma AG v. Watson Labs., Inc.*, No. 14-1804, 2014 WL 2516412, at *7 (D.N.J. June 2, 2014) ("While the Court believes it is self-evident that a single trial in one state would be more convenient to all parties than multiple trials in two states, nothing in the record suggests that either New Jersey or Delaware would be more convenient for the parties based on their 'relative physical and financial condition.'").

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879-80) (internal quotations omitted). The Court finds that while most of these factors are neutral, factor two weighs heavily in favor of transfer, and thus, transfer to the District of Delaware is appropriate.

As a preliminary matter, because this case arises under a federal statute, there is no question that a judgment entered in either district would be enforceable (factor one) and that the judge in either forum would be appropriately familiar with the applicable law (factor six). *See Liggett Grp.*, 102 F. Supp. 2d at 537. Additionally, after reviewing the docket statistics of this District and District of Delaware, the Court finds that the relative administrative difficulty resulting from court congestion (factor 3) is comparable between the two districts. *See* Federal Court Management Statistics–Comparison Within Circuit (Dec. 31, 2016), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2016.pdf. Thus, these three factors are neutral.

Moreover, because this is a patent infringement lawsuit, neither this District nor the District of Delaware has a particular local interest in the dispute (factor four), and no District-specific public policies are implicated (factor five). *See COA Network, Inc. v. J2 Glob. Commc'ns, Inc.*, No. 09-6505, 2010 WL 2539692, at *5 (D.N.J. June 17, 2010) ("Patent infringement lawsuits are matters of national concern that are not 'local controversies,' nor do they implicate the public policies of any one forum."); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012) ("In patent litigation, the local interest factor is typically neutral, 'because patent issues do not give rise to a local controversy or implicate local interests.'") (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)). And, while the Court "recognizes that, 'if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should

be weighed in that venue's favor,'" *Bayer Pharma AG v. Watson Labs., Inc.*, No. 14-1804, 2014 WL 2516412, at \*10 (D.N.J. June 2, 2014) (quoting *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)), this Court has already found that there are no significant connections between the events giving rise to this lawsuit and either this District or the District of Delaware. Accordingly, factors four and five are neutral.

Because the other public interest factors are in equipoise, the dispositive question in determining whether to transfer this action to the District of Delaware centers on whether the practical considerations served by transfer would promote the interests of justice and convenience. *See Liggett Grp.*, 102 F. Supp. 2d at 537 ("Among the criteria in determining the advisability of transfer is whether transfer will promote the interests of justice."). "One practical consideration that supports transfer is efficiency." *Metro. Life Ins. Co. v. Bank One, N.A.*, No. 03-1882, 2012 WL 4464026, at \*7 (D.N.J. Sept. 25, 2012). In that regard, "[w]here related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals.'" *Ricoh*, 817 F. Supp. at 487 (quoting *Pall Corp. v. Bentley Labs., Inc.*, 523 F. Supp. 450, 453 (D. Del. 1981)). In *Ricoh*, the court explained that transfer in such circumstances has numerous benefits:

> Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative litigation involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense and the possibility of inconsistent results.

*Ricoh*, 817 F. Supp. at 487.

Here, the Court finds that interests of judicial economy favor transfer to the District of Delaware. While this District has extensive experience in patent infringement lawsuits, the District of Delaware is similarly experienced, and has already expanded substantial judicial

resources familiarizing itself with the complex infringement issues concerning the '775 patent. Indeed, Judge Sleet currently presides over five method-of-manufacturing actions involving claims related to the '775 patent, and has already presided over a seven-day bench trial in a related method-of-treatment action involving the '775 patent. As the *Mylan Pharmaceuticals* court recognized, "[i]t is difficult to imagine a more extravagantly wasteful and useless duplication of time and effort than for multiple suits involving the same product and the '775 patent, instituted within the past several months, to proceed in different districts." 2017 WL 958324, at *7 (internal quotation marks omitted). I agree that transferring the present action to the District of Delaware would foster the judicial economy outlined in *Jumara*, and prevent the sort of needless duplication of time and effort recognized by the *Mylan Pharmaceuticals* court.

Before *Mylan Pharmaceuticals* and *Synthon Pharmaceuticals* were transferred to the District of Delaware, Teva argued that the present action involved different issues than the Consolidated Action before Judge Sleet, because this case involves a method-of-manufacturing patent rather than a method-of-treatment patent. However, that same argument was rejected by the Court in *Mylan Pharmaceuticals*. *Mylan Pharmaceuticals*, 2017 WL 958324, at *7 (holding that although the method-of-treatment case involved different issues than the method-of-manufacturing case, transfer would promote judicial economy because "after extensive litigation, the District of Delaware is familiar with the parties as well as the products at issue in this case."). And, while the District of Delaware may not have gained familiarity with all of the issues in this method-of-manufacturing case, courts in this District routinely transfer cases to other forums where related, but not identical, cases are already pending. *See Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*, No. 10-6457, 2011 WL 3329087, at *4 (D.N.J. Aug. 2, 2011) ("The existence of multiple cases in Florida, which Plaintiffs concede are 'related

generally' to this case, confirms that the Southern District of Florida is a convenient forum for the parties to litigate this case."); *see also Bayer Pharma AG*, 2014 WL 2516412, at *8 ("The Court notes that this factor will weigh in favor of transfer as long as the cases are sufficiently similar, and that the legal claims and issues involved need not be identical.").

More importantly, at this juncture, the parties to this case are active participants in the transferred method-of-manufacturing cases pending before the District of Delaware that are similar or identical to this case; that is, Teva alleges in those cases, as it does here, that the defendants have committed patent infringement by attempting to market, manufacture, and sell a generic version of the Product.  Additionally, Teva's December 19, 2016 action, as well as Momenta and Amneal's declaratory judgment actions, are pending before the District of Delaware, and concern the same '775 patent at issue in this case.  Regardless of whether this case is sufficiently related to the method-of-treatment issues raised in the completed Consolidated Action, the fact that various method-of-manufacturing cases involving the same claims, patent, and Product at issue in this case are currently before that District militates strongly in favor of transfer.

For the same reasons, Teva's argument that the present action could not be consolidated with the pending Delaware litigation, because Judge Sleet already tried to completion the Consolidated Action, is without merit.  While the Court acknowledges that the Consolidated Action is complete, method-of-manufacturing cases involving the '775 patent have already been transferred to the District of Delaware, and Momenta has filed a declaratory action raising the same claims in that forum.  Even accepting Teva's argument that joinder under 35 U.S.C. § 299 would be impracticable, the present action could be consolidated with the transferred actions and Momenta's action for pretrial purposes.  *In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012)

("In exercising its discretion, the district court should keep in mind that even if joinder is not permitted under Rule 20, the district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42 where venue is proper and there is only 'a common question of law or fact.'") (quoting FED. R. CIV. P. 42(a)). Whether this case would ultimately be consolidated with the related cases pending in the District of Delaware is a matter for that court; however, transferring this case to the District of Delaware presents the opportunity for "coordinated discovery schedules and proceedings if the district court in [Delaware] were so inclined." *Platinum Partners Value Arbitrage Fund*, 2011 WL 3329087, at *6. Indeed, at a minimum, transfer would minimize inefficiencies for the parties, given the fact that many of the same witnesses and party documents are likely to be presented in this case as well as those cases pending in Delaware, including, *inter alia*, testimony from the inventors of the '775 patent. Accordingly, the Court finds that transfer to the District of Delaware would serve the interests of justice and convenience by facilitating judicial economy and minimizing inefficiencies for the parties.

In summary, most of the *Jumara* factors are either neutral or slightly favor transfer to the District of Delaware. However, the practical considerations and issues of judicial economy to be gained from transferring this action to the District of Delaware, where several related method-of-manufacturing actions concerning infringement of the '775 patent and involving the same parties are already pending, weigh heavily in favor of transfer. Therefore, the Court finds that, on balance of the pertinent *Jumara* factors, transfer to the District of Delaware is appropriate.

**IV.** **CONCLUSION**

For the foregoing reasons, the Court finds transfer to the District of Delaware is

warranted in this case, and thus, Sandoz's Motion to Transfer is **GRANTED**.


Dated:  May 23, 2017                                    /s/ Freda L. Wolfson
                                                       Hon. Freda L. Wolfson
                                                       United States District Judge